IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

WILLIAM C. BURFORD,                    *
                                       *
     Plaintiff,                        *
                                       *
vs.                                    *        CIVIL ACTION NO. 17-00163-B
                                       *
NANCY BERRYHILL,                       *
Acting Commissioner of Social          *
Security,                              *
                                       *
     Defendant.                        *

ORDER

Plaintiff William C. Burford (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On April 11, 2018, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 22). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.   __Procedural History__[1]

Plaintiff filed his application for benefits on June 10, 2014, alleging disability beginning November 15, 2011, based on "Manic Depressive Illness, Bipolar I, Major Depressive Disorder, Attention Deficit Hyperactivity Disorder, and Obsessive-compulsive Disorder." (Doc. 12 at 169, 187, 190).  Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Laura Robinson (hereinafter "ALJ") on November 30, 2015.  (Id. at 50).  Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (Id.).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 77). On February 19, 2016, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 23).  The Appeals Council denied Plaintiff's request for review on March 23, 2017.  (Id. at 5).  Therefore, the ALJ's decision dated February 19, 2016, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  Oral argument was conducted on May 16, 2018. (Doc. 25).  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

## II.  Issue on Appeal

**Whether substantial evidence supports the ALJ's assignment of weight to the opinions of Plaintiff's treating physician?**

## III. Factual Background

Plaintiff was born on October 22, 1982, and was thirty-three years of age at the time of his administrative hearing on November 30, 2015.  (Doc. 12 at 187).  Plaintiff completed the eleventh grade in school and obtained his GED.  (Id. at 56).

Plaintiff last worked from 2006 to 2011 as a millwright for a construction company.  Prior to that, from 2004 to 2005, he worked as a welder.  (Id. at 56, 399).

Plaintiff testified that he can no longer work because of neck and shoulder pain and headaches.  (Id. at 57).  Plaintiff takes medication and receives injections for pain.  He also reported that he takes medication for depression and bipolar disorder.  The medications have provided him some relief.  (Id. at 58-59).

## IV. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial

evidence and 2) whether the correct legal standards were applied.[2]
Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court
may not decide the facts anew, reweigh the evidence, or substitute
its judgment for that of the Commissioner.  Sewell v. Bowen, 792
F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of
fact must be affirmed if they are based upon substantial evidence.
Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth
v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding
substantial evidence is defined as "more than a scintilla, but less
than a preponderance" and consists of "such relevant evidence as a
reasonable person would accept as adequate to support a
conclusion.").  In determining whether substantial evidence exists,
a court must view the record as a whole, taking into account
evidence favorable, as well as unfavorable, to the Commissioner's
decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986);
Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14,
1999).

## V.    Statutory and Regulatory Framework

An individual who applies for Social Security disability
benefits must prove his or her disability.  20 C.F.R. §§ 404.1512,
416.912.  Disability is defined as the "inability to engage in any

---

[2] This Court's review of the Commissioner's application of legal
principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th
Cir. 1987).

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). At the fourth step, the ALJ must make an assessment of the claimant's RFC. See Phillips v. Barnhart, 357 F. 3d 1232, 1238 (llth Cir. 2004). The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairment. See Lewis v. Callahan, 125 F. 3d 1436, 1440 (llth Cir. 1997).

If a claimant meets his or her burden at the fourth step, it then becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

## VI. Discussion

### Substantial evidence supports the ALJ's assignment of weight to the opinions of Plaintiff's treating physician.

In his brief, Plaintiff argues that the ALJ erred in failing to assign controlling weight to the opinions of his treating pain management physician, Dr. Robert McAlister, M.D. (Doc. 13 at 1). The Government counters that the ALJ assigned the proper weight to Dr. McAlister's opinions, as they are inconsistent with the objective record evidence. The Government further argues that substantial evidence supports the RFC. (Doc. 18 at 4). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

As part of the disability determination process, the ALJ is tasked with weighing the opinions and findings of treating, examining, and non-examining physicians. In reaching a decision, the ALJ must specify the weight given to different medical opinions and the reasons for doing so. See Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011). The failure to do so is reversible error. See Williams v. Astrue, 2009 U.S. Dist. LEXIS 12010, *4, 2009 WL 413541, *1 (M.D. Fla. 2009).

When weighing the opinion of a treating physician, the ALJ must give the opinions "substantial weight," unless good cause exists for not doing so. Costigan v. Commissioner, Soc. Sec. Admin., 2015 U.S. App. LEXIS 2827, *10, 2015 WL 795089, *4 (11th Cir. Feb. 26, 2015) (citing Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004) and Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985)). The opinion of "a one-time examining physician — or psychologist" is not entitled to the same deference as a treating physician. Petty v. Astrue, 2010 U.S. Dist. LEXIS 24516, *50, 2010 WL 989605, *14 (N.D. Fla. Feb. 18, 2010) (citing Crawford, 363 F.3d at 1160). Also, an ALJ is "required to consider the opinions of non-examining state agency medical and psychological consultants because they 'are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation.'" Milner v. Barnhart, 275 Fed. Appx. 947, 948 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. §

404.1527(f)(2)(i)). "The ALJ may rely on opinions of non-examining sources when they do not conflict with those of examining sources." Id. (citing Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991)).

Whether considering the opinions of treating, examining, or non-examining physicians, good cause exists to discredit the testimony of *any* medical source when it is contrary to or unsupported by the evidence of record. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). "Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence." Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. 2012). The ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010) (The ALJ may reject any medical opinion if the evidence supports a contrary finding.).

In the instant case, the ALJ found that Plaintiff has the severe impairments of degenerative disc disease, affective disorder, anxiety disorder, attention deficit disorder, and

history of opioid dependence.[3] (Doc. 12 at 25). The ALJ also determined that Plaintiff has the RFC to perform less than the full range of light work with the following restrictions: Plaintiff is limited to occasionally climbing, stooping, and crouching. He is limited to occasional overhead reaching with the right arm. He is limited to simple, routine, repetitive tasks; simple work-related decisions; occasional interaction with supervisors, co-workers, and the public; and occasional change in a routine work setting. (Id. at 27).

Based upon the testimony of the vocational expert, the ALJ concluded that Plaintiff is not able to perform his past relevant work but that he can perform other work such as inserting machine operator, electrical accessories assembler, and mold preparer (all light and unskilled). (Id. at 42-43). Thus, the ALJ found that Plaintiff is not disabled.

As noted, *supra*, Plaintiff contends that the ALJ erred in failing to assign controlling weight to the opinions of Dr. McAlister, his treating pain management physician. (Doc. 13 at 1). Having reviewed the evidence at length, the Court is satisfied that substantial evidence supports the weight assigned to Dr. McAlister's opinions.

---

[3] Plaintiff's arguments in this case are directed to the ALJ's findings related to his physical impairments. Therefore, the Court's discussion focuses on those impairments.

The record shows that Dr. McAlister began treating Plaintiff for pain management on July 14, 2015. (Id. at 731, 790). Four months later, on November 30, 2015, Dr. McAlister completed a Clinical Assessment of Pain (CAP) form. On the form, Dr. McAlister opined that, as a result of Plaintiff's cervical fusion surgery in September 2014, Plaintiff's pain was intractable and virtually incapacitating; that physical activity would greatly increase his pain and cause distraction from or abandonment of tasks for at least two hours in an eight-hour workday; that Plaintiff could not perform his previous work; that he would need injections and medication in the future; and that he was restricted to no heavy lifting. (Id. at 790-91). In response to the question inquiring as to whether Plaintiff could perform any type of gainful employment, Dr. McAlister stated that he could not answer the question because he "[did] not do disability exams." (Id. at 791).

The ALJ accorded significant weight to Dr. McAlister's assessment that Plaintiff was restricted from heavy lifting but assigned little weight to the remainder of his opinions. The ALJ found that the limitations recounted by Dr. McAlister in the CAP form were excessive and based on Plaintiff's subjective complaints, which were inconsistent with the medical evidence, and that Dr. McAlister also failed to take into account Plaintiff's diagnosed opioid dependence. (Id. at 41). Having reviewed the record at length, the Court finds that substantial evidence supports the ALJ's

assignment of little weight to the majority of Dr. McAlister's opinions.

First, the record shows that Dr. McAlister treated Plaintiff from July to November 2015 for complaints of moderate to severe neck pain, as well as head, wrist, elbow, arm, and shoulder pain. During the four-month treatment period, Dr. McAlister administered injections and prescribed pain medications, including Percocet and Flexeril. (Id. at 707-31, 741-53, 790). Dr. McAlister's treatment notes reflect that Plaintiff experienced some relief of symptoms with medication. (Id. at 709, 713, 717, 743, 746, 749, 753).

The record also shows that, prior to Dr. McAlister's treatment in 2015, Plaintiff sought treatment in 2014 from Dr. George Corbett, M.D., at Baldwin Bone and Joint. An MRI taken on April 4, 2014, showed a large extruded disc fragment causing some compression and herniation of the C6-C7 disc with spinal stenosis. (Id. at 496, 674). Dr. Corbett referred Plaintiff for injection therapy. (Id. at 496).

From July 2014 to January 2015, Plaintiff received treatment from Dr. Jonathan Rainer at Coastal Neurological Institute for right arm and shoulder pain. (Id. at 542-70). Dr. Rainer initially noted tenderness over C5-6 and C6-7 with limited range of motion on the right, full strength in upper extremities except 4/5 on the right, normal reflexes, normal pulse, no clubbing, no cyanosis, no edema, functional range of motion in all joints, and negative Romberg.

(Id. at 564-70). Dr. Rainer assessed cervicalgia, cervical radiculitis, degenerative disc disease of the cervical spine, and cervical stenosis, which he treated with injections and medication. (Id. at 569-70). Plaintiff continued to complain of pain, and, in August 2014, Dr. Rainer referred Plaintiff to Dr. Edward Flotte, M.D., for surgical evaluation. (Id. at 565). Dr. Flotte performed cervical corpectomy/fusion surgery on September 25, 2014. (Id. at 668, 684-90). At Plaintiff's post-op visits in October and November 2014, Plaintiff continued to report pain, but Dr. Flotte noted that Plaintiff was "in no acute distress," "overall doing okay," and "doing well" after surgery, "with improved symptoms." (Id. at 684, 686-90). Dr. Flotte's physical examination findings further noted "no acute distress," "no spinal deformity," "normal posture and gait," "no weakness or numbness," "no swelling," and normal, full strength in bilateral upper limbs, "full range of motion of all joints," and normal pulses with no clubbing, cyanosis, edema or deformity in extremities. (Id. at 686, 690). Similarly, at Plaintiff's post-op visits with Dr. Rainer in October and November 2014, Dr. Rainer noted that Plaintiff had some tenderness over the trapezius and periscapular muscles but had "full strength" in upper extremities bilaterally, no clubbing, no cyanosis, and no edema, with full range of motion in all joints. (Id. at 449-50, 555).

Plaintiff continued to complain of pain, and on March 4, 2015, he sought treatment from neurosurgeon, Dr. Juan Ronderos, M.D., at

Pinnacle Brain and Spine Center, for neck and right upper extremity pain. (Id. at 668). Dr. Ronderos' physical examination findings showed 5/5 muscle strength in upper extremities, with the exception of 4/5 in right triceps, right brachioradialis, and right wrist; normal grip; normal strength in lower extremities; normal muscle tone in upper and lower extremities; intact sensation; normal coordination; and normal gait and station. (Id. at 670-71).

Dr. Ronderos observed that Plaintiff got in and out of his chair smoothly and had no difficulty changing positions on the exam table. (Id. at 670). Dr. Ronderos further noted that "palpation around the shoulders and rotator cuffs did not cause pain." (Id. at 670). Dr. Ronderos assessed cervical spondylosis, intervertebral disc disorders, and cervical stenosis. (Id. at 671). The following day, on March 5, 2015, Dr. Ronderos notified Plaintiff that he was ending their doctor-patient relationship. (Id. at 667). On that same date, Plaintiff presented to North Baldwin Infirmary complaining of neck pain and a migraine and was treated with medication and released. (Id. at 624, 632-33). His physical examination findings on that occasion showed tenderness in neck muscles with normal range of motion and normal range of motion in extremities with no edema and no tenderness. (Id. at 628-29).

On March 26, 2015, Plaintiff sought treatment from Dr. Patricia Boltz, M.D., for complaints of migraine, neck, right shoulder, and arm pain without relief from injections and medication. Plaintiff

reported that the neck surgery had helped some. (Id. at 673). Dr. Boltz noted that Plaintiff was seeking a new pain management doctor because his previous doctors (Ronderos, Flotte, and Lee) refused to provide him the pain medication that he was seeking. (Id.). Dr. Boltz's physical examination findings included pain produced on cervical range of motion, but normal gait and station, heel/toe walk without difficulty, normal grip strength, no weakness, full range of motion in lumbar spine, and negative straight leg raise. (Id. at 674). Dr. Boltz assessed cervical radiculopathy, cervical degenerative disc disease status post cervical disc fusion, myofascial pain, and opioid dependence. (Id. at 675). Dr. Boltz opted not to treat Plaintiff further. (Id.).

From May to August 2015, Plaintiff saw Dr. Shawn Clarke, M.D., at Clark Neurosurgery for neck pain. Dr. Clark's initial physical examination findings showed no acute distress, normal neck with no pain on range of motion, no clubbing, cyanosis or edema in extremities, limited range of motion in cervical spine on the right, moderate cervical spasm, and tenderness over the right trapezius muscle, but 5/5 motor strength and tone. (Id. at 769-70). Dr. Clark assessed cervical spondylosis without myelopathy, cervicalgia, and spinal stenosis in cervical region. (Id. at 770).

Because of Plaintiff's continued complaints of neck pain, Dr. Clark performed a second cervical fusion/discectomy surgery and removal of hardware on June 24, 2015. (Id. at 696, 761-66). The

hospital notes from the surgery reflect that Plaintiff was "doing well" post operatively, that he was demanding of nursing staff with regard to pain medication, that he was caught leaving the floor serval times to go to the parking lot to smoke cigarettes, and that he was ambulating independently.  (Id. at 696).  His prognosis for a full recovery from surgery was noted as "excellent," while his recovery from his "situation" with chronic pain was noted as "guarded."  (Id.).  An MRI taken on July 20, 2015, showed postoperative changes from fusion surgery with no residual or recurrent stenosis or postoperative complication.  (Id. at 758).  At his post-operative examination in August 2015, Plaintiff reported symptom relief with injections and Percocet.  (Id. at 754).  Plaintiff's physical examination findings included no acute distress, full range of motion in extremities with  no clubbing, cyanosis, or edema, and normal strength, tone, and reflexes.  (Id. at 754).  With the exception of mental health treatment, this is the final treatment note in the record.

While there is no question that Plaintiff has been diagnosed with cervical degenerative disc disease, a condition which has resulted in pain and two cervical fusion surgeries to treat herniated discs, Plaintiff's medical records reflect a largely successful treatment plan that has been adequate at controlling his symptoms.  As detailed above, Plaintiff's treating and examining physicians have regularly documented largely normal physical

examination findings and improvement in symptoms with medication and surgery, repeatedly noting "no acute distress," "overall doing okay," "doing well," "improved symptoms," "normal posture and gait," "no weakness or numbness," "no swelling," full strength, "full range of motion of all joints," normal pulses, no clubbing, cyanosis, edema, or deformity in extremities, intact sensation, normal coordination, normal gait and station, in and out of his chair smoothly, no difficulty changing positions on exam table, heel/toe walk without difficulty, no weakness, "doing well" post operatively, and ambulating independently.[4] (Id. at 449-50, 555, 564-70, 670-74, 684, 686-90, 696).

The record is also replete with evidence that Plaintiff suffered from opioid and substance abuse and may have been drug seeking.[5] (Id. at 464-66, 667, 675, 678, 696, 761).

In addition, the evidence of Plaintiff's activities of daily living reflects that he takes care of his own personal needs, that he takes care of his children and pets, that he cooks, helps with chores, does household repairs, mows the lawn and gardens, does

---

[4] As detailed above, even Dr. McAlister noted that Plaintiff's medications were providing some relief from symptoms. (Doc. 12 at 709, 713, 717, 743, 746, 749, 753).

[5] This evidence supports the ALJ's finding that Plaintiff's complaints of pain, which were overstated in comparison to the objective findings, may be have been motivated by a desire to obtain pain medication. (Doc. 12 at 41-42). Plaintiff does not challenge the ALJ's credibility finding.

welding, drives, shops, attends church, and visits family. (Id. at 55, 390-94, 407-10).

In sum, the foregoing substantial evidence reflects, overall, successful treatment for Plaintiff's cervical degenerative disc disease resulting in largely normal examination findings and adequate control of symptoms and is inconsistent with the excessive limitations expressed in the CAP form completed by Dr. McAlister. Therefore, the ALJ had good cause to discredit the majority of Dr. McAlister's opinions.

The Court further finds, based on the evidence detailed above, that substantial evidence supports the ALJ's finding that Plaintiff has the RFC to perform a range of light work, with the stated restrictions.[6]  Indeed, Plaintiff has failed to show that any limitations caused by his impairments exceed the RFC and are not accommodated by the RFC and its stated restrictions.  For each of these reasons, Plaintiff's claim must fail.[7]

_____

[6] As stated, the ALJ found that Plaintiff has the RFC to perform less than the full range of light work with the following restrictions: Plaintiff is limited to occasionally climbing, stooping, and crouching.  He is limited to occasional overhead reaching with the right arm.  He is limited to simple, routine, repetitive tasks; simple work-related decisions; occasional interaction with supervisors, co-workers, and the public; and occasional change in a routine work setting.  (Doc. 12 at 27).

[7] Although Plaintiff has cited evidence in the record which he claims supports a finding that he is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence.

**VII.** <u>**Conclusion**</u>

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **AFFIRMED**.

**DONE** this **13th** day of **September, 2018.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**

---

See Figueroa v. Commissioner of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, *15-16, 2017 WL 4992021, *6-7 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.").